**FILED** #1

vgom
200100078

**APR 2 9 2003**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

AT 8:30_____M
**WILLIAM T. WALSH**
**CLERK**

Hon. 03-327 (JLL)

-------------------------
UNITED STATES OF AMERICA

            v.

JOSEPH NARDONE, JR.,
STANLEY ROTHMAN and
PETER HASHO
-------------------------

CRIM. NO.
TITLE 18 U.S.C. Sections 371,
664, 1956(a) and 2
TITLE 29 U.S.C. Section 501(c)

## INDICTMENT

The Grand Jury in and for the District of New Jersey,

sitting at Newark, charges that

### COUNT ONE

#### (Conspiracy to Steal Welfare Funds)

1. At all times relevant to this Indictment:

(a) Local 148 of the International Novelty Workers Union

(hereinafter "Local 148"), located at One Nardone Place, Jersey

City, New Jersey, was a "labor organization" within the meaning

of the provisions of Title 29, United States Code, Sections

152(5), 402(i), 402(j) and 1002(4). It represented and admitted

to membership persons employed in the garment industry and other

service industries in New Jersey, and elsewhere.

(b) Local 148 also maintained an employee welfare benefit

1

plan (hereinafter the Welfare Fund), within the meaning of the
Employment Retirement Income Security Act of 1974 (hereinafter
ERISA), as embodied in Title 29, United States Code, Section 1002
(1).

(c) Defendant JOSEPH NARDONE, JR. served as a trustee and
the Administrator of the Welfare Fund from 1996 until the
present.  As such, he was a fiduciary who occupied a position of
trust pursuant to Title 29, United States Code, Sections 1104 and
1106.  As a fiduciary, his duties were, among others: (1) to act
solely in the interests of the participants of the Welfare Fund;
(2) to avoid acting in his own personal self-interest; and (3) to
avoid acting on behalf of any party whose interests were adverse
to the interests of the Welfare Fund.

(d) "John Doe", an unindicted coconspirator, was an officer
of Local 148 and a representative and a trustee of the Welfare
Fund from approximately 1959 until March 31, 1996.  From February
1996 until 1999, he was an adviser to the Welfare Fund.

(e) Defendant STANLEY ROTHMAN was the President of York
Builders, a company doing business in the construction industry
in Hudson County, New Jersey and elsewhere.  From 1996 through
1999, defendant STANLEY ROTHMAN, doing business as York Builders,
acted as the general contractor on a parking lot project at 242-

2

244 Beacon Ave, Jersey City, New Jersey (hereinafter the parking lot project) and a building renovation project at One Nardone Place (hereinafter the renovation project) for the Welfare Fund.

(f)   JOE-STAN Corp. was a corporation created in May 1993. Its directors were defendant STANLEY ROTHMAN and unindicted coconspirator John Doe.

(g)   S.F., an unindicted coconspirator, was a subcontractor who was hired by defendant STANLEY ROTHMAN to perform work at the above described parking lot project and the renovation project for the Welfare Fund.

(h)   The Welfare Fund owned four vacant lots at Mercer and Wayne streets in Jersey City, New Jersey (hereinafter known as lots A, B, B1 and C).

2.   From at least in or about December 1992 through at least in or about May 2001, in Hudson County, in the District of New Jersey and elsewhere, the defendants,

JOSEPH NARDONE, JR. and
STANLEY ROTHMAN

did knowingly and willfully conspire and agree with each other, and others, to embezzle, steal and unlawfully convert to their own use and the use of others, money and funds of the Welfare Fund, totaling in excess of $350,000, contrary to Title 18, United States Code, Section 664.

3

## MANNER AND MEANS

3.  It was part of the conspiracy that on or about December 18, 1992, defendant STANLEY ROTHMAN signed an exclusive one year contract with John Doe and the Welfare Fund to purchase lots A, B, B1, and C for $70,000.  Thereafter, on February 4, 1993, defendant STANLEY ROTHMAN signed another contract extending the above described agreement until February 4, 1997.

4.  It was further part of the conspiracy that in August 1997, defendant JOSEPH NARDONE, JR., as Administrator of the Welfare Fund, agreed to pay defendant STANLEY ROTHMAN $300,000 to purchase property in Jersey City, New Jersey and convert it into a parking lot for the benefit of the Welfare Fund without bidding the project out.

5.  It was further part of the conspiracy that approximately $110,000 of the purchase price, described in paragraph 4 above, was inflated and intended to improperly convert Welfare Fund money to the benefit of defendants STANLEY ROTHMAN and JOSEPH NARDONE, JR., to the detriment of the Fund's participants.

6.  It was further part of the conspiracy that in the Spring 1998, defendant JOSEPH NARDONE, JR. again hired defendant STANLEY ROTHMAN as the general contractor for a renovation project at the Welfare Fund office building, without opening the project for

4

competitive bidding. Thereafter, defendant STANLEY ROTHMAN submitted, and defendant JOSEPH NARDONE, JR. knowingly accepted, an inflated price of $440,000 for the renovation project which directly and indirectly converted Welfare Fund money to their own use, to the detriment of the Fund's participants.

7. It was further part of the conspiracy that defendant JOSEPH NARDONE, JR., as Administrator of the Welfare Fund, opened a separate "building fund" account at the Pamrapo Savings Bank in order to circumvent the Welfare Fund's Trust Agreement. Thereafter, defendant JOSEPH NARDONE, JR. issued checks, totaling in excess of $575,000, to York Builders for renovating One Nardone Place, knowing that a significant portion of said disbursements was excessive and provided no genuine benefit to the Welfare Fund or its participants.

8. It was further part of the conspiracy that defendant STANLEY ROTHMAN issued checks totaling in excess of $600,000 from York Builders to subcontractor S.F., and others, who then returned approximately $250,000 in cash to defendant STANLEY ROTHMAN from the proceeds of the parking lot and renovation projects.

9. It was further part of the conspiracy that in or about early 1999, defendant JOSEPH NARDONE, JR. falsified an existing

contract to extend the time period in which the Welfare Fund could sell lots A, B, B1 and C to defendant STANLEY ROTHMAN.

10. It was further part of the conspiracy that on or about April 26, 1999, defendant JOSEPH NARDONE, JR. permitted defendant STANLEY ROTHMAN to purchase lots A, B, B1 and C from the Welfare Fund for $70,000 which he sold six days later for $145,000; thus generating a $75,000 profit for defendant STANLEY ROTHMAN, to the detriment of the Welfare Fund and its participants.

## TOTAL AMOUNT EMBEZZLED FROM THE WELFARE FUND

11. As a consequence of the above described parking lot and renovation projects, in excess of $275,000 was embezzled from the Welfare Fund by the defendants JOSEPH NARDONE, JR. and STANLEY ROTHMAN. In addition, $75,000 was also embezzled from the Welfare Fund resulting from the sale of lots A, B, B1 and C by defendant JOSEPH NARDONE, JR. to defendant STANLEY ROTHMAN.

12. It was further part of the conspiracy that defendant JOSEPH NARDONE, JR. improperly established a substantial "deferred compensation" plan for himself, creating a significant and unnecessary future liability for the Welfare Fund and its participants.

## Overt Acts

13. In furtherance of this conspiracy and to effect the

6

objects thereof, the defendants committed and caused to be committed, among others, the following overt acts in the District of New Jersey and elsewhere:

a.     On or about February 4, 1993, defendant STANLEY ROTHMAN signed an exclusive four year contract with John Doe and the Welfare Fund to purchase lots A, B, B1, and C;

b.     In or about 1997, defendant JOSEPH NARDONE, JR. established for himself a substantial "deferred compensation" plan funded by the Welfare Fund;

c.     On or about August 17, 1997, defendant JOSEPH NARDONE, JR. opened a "building fund" account at Pamrapo Savings Bank on behalf of the Welfare Fund in Jersey City, New Jersey;

d.     On December 2, 1997, defendant JOSEPH NARDONE released $265,000 from the Welfare Fund for the purchase of the parking lot;

e.     On December 9, 1997, defendant STANLEY ROTHMAN purchased the parking lot property from third parties;

f.     On December 9, 1997, defendant STANLEY ROTHMAN sold the parking lot property to the Welfare Fund;

g.     On or about March 17, 1998, M.R. cashed a check from York Builders and returned $5000 in cash to defendant STANLEY ROTHMAN;

7

h.   On or about March 20, 1998, A.T. cashed a check from York Builders and returned $5000 in cash to defendant STANLEY ROTHMAN;

i.   On or about March 20, 1998, M.R. cashed a check from York Builders and returned $5000 in cash to defendant STANLEY ROTHMAN;

j.   On or about May 13, 1998, defendant STANLEY ROTHMAN submitted an inflated contract price of $440,000 to defendant JOSEPH NARDONE, JR. for the renovation project;

k.   On or about May 25, 1998, defendant JOSEPH NARDONE, JR. issued a $200,000 check to York Builders from the Welfare Fund's "building fund" account for the renovation project;

l.   On or about July 20, 1998, defendant JOSEPH NARDONE, JR. requested that $300,000 in securities be sold from the Welfare Fund investment portfolio;

m.   On or about August 3, 1998, defendant JOSEPH NARDONE, JR. issued a $20,000 check to York Builders from the Welfare Fund's "building fund" account;

n.   In or about the week of August 19, 1998, S.F. delivered $20,000 in cash to defendant STANLEY ROTHMAN;

O.   In or about the week of August 31, 1998, S.F. delivered $20,000 in cash to defendant STANLEY ROTHMAN;

p. On or about September 18, 1998, defendant JOSEPH NARDONE, JR. issued a \$95,000 check to York Builders from the Welfare Fund's "building fund" account for the renovation project;

q. On or about September 25, 1998, defendant STANLEY ROTHMAN submitted an inflated proposal to the Welfare Fund for additional construction at the Welfare Fund building;

r. In or about early November 1998, S.F. gave approximately \$88,000 in cash to defendant STANLEY ROTHMAN;

s. On or about November 11, 1998, defendant JOSEPH NARDONE, JR. issued a \$66,000 check to York Builders from the Welfare Fund's "building fund" account for the renovation project;

t. On or about November 11, 1998, defendant JOSEPH NARDONE, JR. issued a \$34,000 check to York Builders from the Welfare Fund's "building fund" account for the renovation project;

u. On or after December 2, 1998, S.F. gave approximately \$67,000 in cash to defendant STANLEY ROTHMAN;

v. On or about December 24, 1998, defendant JOSEPH NARDONE, JR. issued a \$20,000 check to York Builders from the Welfare Fund's "building fund" account for the renovation

project;

w.     On or about December 24, 1998, defendant JOSEPH
NARDONE, JR. issued a $50,000 check to York Builders from the
Welfare Fund's "building fund" account for the renovation
project;

x.     On or about December 24, 1998, defendant JOSEPH
NARDONE, JR. issued a $14,500 check to York Builders from the
Welfare Fund's "building fund" account for the renovation
project;

y.     On or about February 24, 1999, defendant JOSEPH
NARDONE, JR. issued a $48,000 check to York Builders from the
Welfare Fund's "building fund" account for the renovation
project;

z.     In or about early 1999, defendants JOSEPH NARDONE, JR.
and STANLEY ROTHMAN falsified a contract for the sale of lots A,
B, B1 and C by the Welfare Fund;

aa.    On or about March 23, 1999, S.F. gave approximately
$25,000 in cash to defendant STANLEY ROTHMAN;

bb.    On or about April 26, 1999, defendant STANLEY ROTHMAN
purchased lots A, B, B1 and C from the Welfare Fund for $70,000;

cc.    On or about May 4, 1999, defendant STANLEY ROTHMAN sold
lots A, B, B1 and C for $145,000;

10

dd.  On or after December 2, 1999, S.F. gave approximately $14,500 in cash to defendant STANLEY ROTHMAN; and

ee.  On or about May 1, 2001, defendant JOSEPH NARDONE, JR. issued a $31,500 check to York Builders from the Welfare Fund's "building fund" account for the renovation project.

All in violation of Title 18, United States Code, Section 371.

11

## COUNT TWO

### (Embezzlement from Welfare Fund)

1. Paragraphs 1(a)-(f), 1(h), 3, 9 and 10 of Count One are hereby realleged and incorporated as if set forth fully herein.

2. Between on or about April 26, 1999 and May 4, 1999, in Hudson County, in the District of New Jersey and elsewhere, the defendants,

JOSEPH NARDONE, JR. and
STANLEY ROTHMAN

did knowingly and willfully embezzle, steal and unlawfully convert to their own use and the use of others, money and funds of the Welfare Fund, totaling approximately $75,000.

In violation of Title 18, United States Code, Sections 664 and 2.

12

## COUNT THREE

### (Conspiracy to Steal from Local 148)

1. Paragraph 1(a) of Count One is hereby realleged and incorporated as if set forth fully herein.

2. Defendant JOSEPH NARDONE, JR. served as President of Local 148 from approximately March 1996 until 1999. As such, he was a fiduciary who occupied a position of trust.

3. Defendant PETER HASHO was President of Local 713 of the International Brotherhood of Trade Unions, located in Albertson, Nassau County, New York, which was a "labor organization" within the meaning of the provisions of Title 29, United States Code, Sections 152(5), 402(i) and 402(j). It represented and would admit to membership persons employed in the service industries in New York and elsewhere. Between December 1997 and January 1999, defendant PETER HASHO was also employed at Local 148.

4. From at least December 1997 through at least early January 1999, in Hudson County, in the District of New Jersey and elsewhere, the defendant,

JOSEPH NARDONE, JR. and
PETER HASHO

did knowingly and willfully conspire and agree with each other and others, to embezzle, steal, and unlawfully convert to their

13

own use, money and funds of Local 148, totaling approximately
$17,900, contrary to Title 29, United States Code, Section
501(c).

## MANNER AND MEANS

5. It was part of the conspiracy that in December 1997,
defendant JOSEPH NARDONE, JR. agreed to pay defendant PETER HASHO
as a "special independent organizer" for Local 148 at $1300 per
month. In truth, defendant PETER HASHO organized no businesses
for Local 148 and provided no legitimate services to Local 148,
all the while collecting payments, to the detriment of Local 148
and its members.

## Overt Acts

6. In furtherance of this conspiracy and to effect the
objects thereof, the defendants committed and caused to be
committed, among others, the following overt acts in the District
of New Jersey and elsewhere:

a. In or about December 22, 1997, defendant JOSEPH NARDONE,
JR. issued a $1000 Christmas bonus check to defendant PETER HASHO
from Local 148;

b. On or about December 31, 1997, defendant JOSEPH NARDONE,
JR. issued a $1300 salary check to defendant PETER HASHO from
Local 148;

14

c. On or about January 29, 1998, defendant JOSEPH NARDONE, JR. issued a $1300 salary check to defendant PETER HASHO from Local 148;

d. On or about March 5, 1998, defendant JOSEPH NARDONE, JR. issued a $1300 salary check to defendant PETER HASHO from Local 148;

e. On or about April 2, 1998, defendant JOSEPH NARDONE, JR. issued a $1300 salary check to defendant PETER HASHO from Local 148;

f. On or about April 23, 1998, defendant JOSEPH NARDONE, JR. issued a $1300 salary check to defendant PETER HASHO from Local 148;

g. On or about May 28, 1998, defendant JOSEPH NARDONE, JR. issued a $1300 salary check to defendant PETER HASHO from Local 148;

h. On or about July 2, 1998, defendant JOSEPH NARDONE, JR. issued a $1300 salary check to defendant PETER HASHO from Local 148;

i. On or about July 30, 1998, defendant JOSEPH NARDONE, JR. issued a $1300 salary check to defendant PETER HASHO from Local 148;

15

j. On or about August 27, 1998, defendant JOSEPH NARDONE, JR. issued a $1300 salary check to defendant PETER HASHO from Local 148;

k. On or about August 29, 1998, defendant JOSEPH NARDONE, JR. issued a $1300 salary check to defendant PETER HASHO from Local 148;

l. On or about November 5, 1998, defendant JOSEPH NARDONE, JR. issued a $1300 salary check to defendant PETER HASHO from Local 148;

m. On or about December 1, 1998, defendant JOSEPH NARDONE, JR. issued a $1300 salary check to defendant PETER HASHO from Local 148; and

n. On or about December 31, 1998, a $1300 salary check was issued to defendant PETER HASHO from Local 148.

All in violation of Title 18, United States Code, Section 371.

16

## COUNT FOUR

### (Embezzlement from Local 148)

1. Paragraph 1(a) of Count One, and paragraphs 2 and 3 of Count Three are hereby realleged and incorporated as if set forth fully herein.

2. From at least December 1997 through in or about January 1999, in Hudson County, in the District of New Jersey and elsewhere, the defendants,

JOSEPH NARDONE, JR. and
PETER HASHO

did knowingly and willfully embezzle, steal and unlawfully convert to their own use, and the use of others, money and funds of Local 148, totaling approximately $17,900.


In violation of Title 29, United States Code, Section 501(c) and Title 18, United States Code, Section 2.

17

## COUNT FIVE

## (Conspiracy to Conceal Material Facts - HUD Fraud)

1.    Defendant STANLEY ROTHMAN was the President of York Builders of Florida, a corporation incorporated in January 1998, that bought and sold properties in Florida.

2.    The United States Department of Housing and Urban Development (hereinafter HUD) was an agency of the United States Government which administered a variety of financial programs designed, among other things, to assist qualified individuals in the purchasing of specified HUD owned residential properties.

3.    South Palm Realty Services Inc. of Palm Beach, Florida [hereinafter South Palm Realty] was a licensed Florida real estate brokerage firm which was contracted by HUD to arrange the sale of property owned by the Federal Government.  H.B., an unindicted coconspirator, was an agent for South Palm Realty.

4.    From at least as early as January 1997 to at least September 2002, in the District of New Jersey, and elsewhere, the defendant

### STANLEY ROTHMAN

did knowingly and wilfully, in a matter within the jurisdiction of the executive branch of the government of the United States, conspire and agree with others, to falsify, conceal, and cover up

18

by trick, scheme and device material facts concerning the
purchase of property from HUD, as set forth more fully in the
manner and means paragraphs below, contrary to Title 18, United
States Code, Section 1001.

## Manner and Means

5.  It was part of the conspiracy that defendant STANLEY
ROTHMAN unlawfully acquired certain residential properties from
HUD, in the State of Florida, through the use of individuals,
acting as "straw buyers", who had no intention of purchasing HUD
properties for the purpose of residing in Florida.

6.  It was further part of the conspiracy that defendant
STANLEY ROTHMAN agreed with unindicted coconspirator H.B., and
others, to create and submit false documents in the names of the
above described "straw buyers" to purchase HUD owned properties
in Florida.

7.  It was further part of the conspiracy that defendant
STANLEY ROTHMAN would obtain "quit claim" deeds from the "straw
buyers" in order to acquire title to the aforementioned HUD
properties, in violation of HUD regulations.

8.  It was further part of the conspiracy that unindicted
coconspirator H.B. facilitated defendant ROTHMAN's scheme to
defraud HUD by forging the names of certain "straw buyers" on

19

various HUD documents.

9. It was further part of the conspiracy that defendant STANLEY ROTHMAN, having secured title to the aforementioned HUD residential properties from "straw-buyers", would thereafter resell the said properties at a significant profit, in violation of HUD regulations.

## Overt Acts

10. In furtherance of this conspiracy and to effect the objects thereof, defendant STANLEY ROTHMAN and others committed and caused to be committed, among others, the following overt acts in the District of New Jersey and elsewhere:

a. On or about July 8, 1997, defendant STANLEY ROTHMAN utilized S.R. as a "straw buyer" to purchase HUD property;

b. On or about July 25, 1997, defendant STANLEY ROTHMAN utilized D.R. as a "straw buyer" to purchase HUD property;

c. On or about February 3, 1998, defendant STANLEY ROTHMAN utilized C.M. as a "straw buyer" to purchase HUD property;

d. On or about March 19, 1998, defendant STANLEY ROTHMAN utilized A.S. as a "straw buyer" to purchase HUD property;

e. On or about August 26, 1998, defendant STANLEY ROTHMAN utilized S.F. as a "straw buyer" to purchase HUD property;

20

f.   On or about January 5, 1999, defendant STANLEY ROTHMAN
utilized C.S. as a "straw buyer" to purchase HUD property;

g.   On or about February 26, 1999, defendant STANLEY ROTHMAN
utilized D.G. as a "straw buyer" to purchase HUD property; and

h.   On or about September 17, 2002, the defendant STANLEY
ROTHMAN called unindicted coconspirator H.B. to warn her that
federal agents were in Florida conducting an investigation into
the above described scheme to defraud HUD.

All in violation of Title 18, United States Code, Section
371.

21

## COUNT SIX

### (Money Laundering)

1. Paragraphs 1(a)-(c), (e), (g), 4 through 6 and 8 of Count One are hereby realleged and incorporated as if set forth fully herein.

2. From at least the Spring 1998 to at least December 1999, in Jersey City, in the District of New Jersey, and elsewhere, the defendant,

STANLEY ROTHMAN

knowing that the property involved in the financial transactions, as described in paragraph 8 of Count One incorporated above, represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, did knowingly and willfully conduct financial transactions affecting interstate commerce which in fact involved the proceeds of specified unlawful activity, specifically the transfer, delivery, and other disposition of United States currency in excess of $225,000 that was the proceeds of an embezzlement from a union benefit plan, contrary to Title 18, United States Code, Section 664.

In violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

A TRUE BILL

Christopher J. Christie

CHRISTOPHER J. CHRISTIE
UNITED STATES ATTORNEY

CRIM. NUMBER: 03-_____

# United States District Court
# District of New Jersey

UNITED STATES OF AMERICA

vs.

**JOSEPH NARDONE, JR.,**
**STANLEY ROTHMAN and**
**PETER HASHO**

# INDICTMENT
# FOR

**Title 18 U.S.C. §§ 371, 664, 1956 a(1)(B)(i) & 2**
**Title 29 U.S.C. § 501(c)**

# CHRISTOPHER J. CHRISTIE
*U.S. ATTORNEY NEWARK, NEW JERSEY*

V. GRADY O'MALLEY, AUSA - (973)645-2725
UNITED STATES ATTORNEY'S OFFICE
970 BROAD STREET, SUITE 700
NEWARK, NEW JERSEY